**FILED**
**CLERK**

12:08 pm, Mar 04, 2024

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RONALD EGERS,

              Plaintiff,            MEMORANDUM & ORDER
                                        19-CV-4348 (JS)(ARL)

    -against-

ALLSTATE INSURANCE COMPANY,

              Defendant.
---------------------------------X
APPEARANCES
For Plaintiff:      Thomas Ricotta, Esq.
                      Ricotta & Marks, P.C.
                      24-11 41st Avenue, 2nd Floor
                      Long Island City, New York 11101

For Defendant:      Linda Wong, Esq.
                      Wong Fleming, P.C.
                      One Rockefeller Plaza, 11th Floor
                      New York, New York 10020

SEYBERT, District Judge:

        On April 26, 2019, Plaintiff filed this employment discrimination action in the Supreme Court of the State of New York, Queens County, alleging employment discrimination pursuant to Executive Law § 296, known as New York State Human Rights Law, (hereafter, "NYHRL")[1]. (See generally Compl., ECF No. 1-3.) On July 29, 2019, Defendant removed this action to federal court on the basis of diversity jurisdiction. (See Notice of Removal, ECF No. 1.) Presently before the Court is Defendant's Motion for

---

[1] In his Complaint, Plaintiff also brought an action for retaliation pursuant to Executive Law § 296(7). Plaintiff has since withdrawn this claim (see Opp'n, ECF No. 53, at n.1); therefore, the Court declines to evaluate its merits.

Summary Judgment (hereafter, "Motion"), filed pursuant to Federal Rule of Civil Procedure (hereafter, "Rule") 56.  Defendant argues it is entitled to summary judgment because Plaintiff cannot make a prima facie showing of discrimination under NYHRL, stating, inter alia, Plaintiff: (1) cannot demonstrate he has a qualifying disability; (2) cannot demonstrate he could perform the essential functions of his job, even with accommodations; and (3) the Court should dismiss Plaintiff's claims for punitive damages and backpay because there is no evidence Defendant acted with malice and Plaintiff failed to mitigate his damages.  (See Support Memo, ECF No. 43, at 9, 11, 16, 17.)  In contrast, Plaintiff argues: (1) he was disabled, as evidenced by Defendant granting him several leaves of absence and considering his accommodation requests; (2) he would have been able to perform the essential functions of his job, if accommodated; and (3) any dismissal of his claims for lost wages and punitive damages would be premature at this stage of the litigation.  (Opp'n, ECF No. 53, at 8-9, 10).  For the reasons that follow, Defendant's Motion is DENIED IN ITS ENTIRETY.

BACKGROUND[2]

I. The Parties

Defendant Allstate Insurance Company (hereafter, "Defendant" or "Allstate") is an insurance company, doing business in the state of New York, that provides policies covering automobiles, homes, businesses, and other products. (Lawrence

---

[2] The following facts are taken from Defendant's Local Rule 56.1 Statement (hereafter, "Def's 56.1 Stmt.") (ECF No. 44); Plaintiff's Local Rule 56.1 Counterstatement (hereafter, "Pl's 56.1 Counterstmt.") (ECF No. 53-1); and the declarations and exhibits submitted relative to the instant Motion (ECF Nos. 45-49).

Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Order means the Court has deemed the underlying factual assertion undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited within. Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal. See Steward v. Fashion Inst. of Tech., No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be specifically controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]." McFarlance v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

Decl., ECF No. 46, ¶ 2.)  Plaintiff Robert Egers (hereafter, "Plaintiff or "Egers") was hired by Allstate in 1999 as a trial attorney "representing Allstate in the defense of major automobile and homeowners carrier insurance litigation."  (Def's 56.1 Stmt ¶ 6; Pl's 56.1 Counterstmt ¶ 6.)

II. Allstate's Internal Policies and Processes

Allstate maintains a Global Code of Conduct that highlights its "commitment to a workplace that is free from discrimination and retaliation" and provides training to its employees concerning its policies against discrimination and retaliation in the workplace.  (Def's 56.1 Stmt ¶ 2; Pl's 56.1 Counterstmt ¶ 2.)  Allstate further provides its employees with access to a process whereby employees may file a complaint if they have concerns about discrimination and retaliation in the workplace.  (Id.)  Allstate's policies permit employees with disabilities to request reasonable workplace accommodations.  (Id.)  Workplace accommodations are handled by Allstate's Workplace Assistance Team, part of its Human Resources Department, "which engages in the interactive process with employees and their doctors upon request to determine what accommodations may be available to assist employees in performing the essential functions of their positions, including accommodations such as employee leaves of absences, placement into vacant positions for which an employee may be qualified, and physical and other

4

modifications of the workplace, as appropriate." (Def's 56.1 Stmt ¶ 3; Pl's 56.1 Counterstmt ¶ 3.).

III. Plaintiff's Legal Career

Prior to beginning work at Allstate in 1999, Plaintiff worked for the United States Bureau of Narcotics, had his own law practice, worked for various other law firms, and worked as an administrative law judge for the City of New York. (Pl's Dep. Tr., ECF No. 41-1, at 10:23 to 23:15, attached to Wong Decl.) Plaintiff began working as an attorney conducting trials at least as early as 1980 and handled those trials on his own, i.e., without a "second chair." (Id. at 16:2-16:7; 21:6-21:15.; 22:6-22:14.)

Once hired by Allstate in 1999, Plaintiff continued performing trial work. (Id. at 29:15-29:24.) As of 2015, Plaintiff's job title was "Law and Regulation Litigation Services Attorney – Expert", a role that, according to the job description, required him to "[p]repare[] for and conduct[] hearings, trials, arbitrations, mediations, and depositions." (Job Description, ECF No. 46-1, attached to Lawrence Decl.) One of the "key responsibilities" of this role included "second chair[ing] cases with Trial Attorneys and Senior Trial Attorneys as needed." (Id.) As a trial attorney at Allstate, Plaintiff believed he did a "good job" and that some of his colleagues even looked up to him as a mentor with respect to trying cases. (Pl's Dep. Tr. 36:4-36:23.) At the time Plaintiff left Allstate in 2015/2016, he was "among

5

the most experienced" trial attorneys employed by Allstate. (Id. 37:20-38:5.)

Despite Plaintiff's admissions that he conducted trials as part of his job at Allstate and served as one of the most experienced trial attorneys at the company, Plaintiff testified he was not required by Allstate to handle "jury trials" at all from 2010 until the date of his termination. (Id. 87:14-87:19; Pl's 56.1 Counterstmt ¶ 9.) Plaintiff did however, conduct "mediations, settlement conferences, depositions, non-jury frames, framed issue trials" and "small claims non-jury" trials during that time span. (Pl's Dep. Tr. 103:20-104:7.)

IV. Plaintiff's Disabilities and Leaves of Absence

On August 24, 2015, following a two-and-a-half-year medical leave of absence, Plaintiff returned to work at Allstate, requesting he be relieved from handling trials due to his heart condition. (Def's 56.1 Stmt. ¶ 17). Approximately one week later, on September 2, 2015, Plaintiff submitted a formal request for an accommodation via Allstate's Workplace Assistance Program, which handled employee workplace accommodation requests. (Def's 56.1 Stmt. ¶ 20; Accommodation Request, ECF No. 48-1, attached to Foney Decl.) On September 26, 2015, Plaintiff submitted to Allstate medical documentation from his doctor whereby his doctor stated: "Mr. Egers had coronary bypass surgery . . . [he] has fatigue, anxiety, [and] frequent urination" which would affect his ability

6

to "try[] cases" and engage in "prolonged standing during trial." (Medical Accommodation Form, ECF No. 48-2, attached to Foney Decl.)

In response to Plaintiff's request for the workplace accommodation of "no trials," Allstate extended Plaintiff's leave of absence from August 27, 2015 to October 11, 2015. (Def's 56.1 Stmt. ¶ 23; Pl's 56.1 Counterstmt. ¶23; Foney Decl., ECF No. 48, ¶ 7.)  On October 5, 2015, Allstate granted Plaintiff "a temporary rehabilitative accommodation on a trial basis" that temporarily relieved Plaintiff from working on trials for 60 days.  (Foney Decl. ¶12).  This temporary accommodation period, which spanned from October 19, 2015 to December 13, 2015, was provided to "assist [Plaintiff] with returning to work" and "help [him] return to performing the essential functions of [his] job." (Accommodation Approval Form, ECF No. 48-3, attached to Foney Decl.)  Via an approval form, Allstate made clear that following the 60-day temporary accommodation period, Plaintiff was "expected to return to full-time work and must be able to perform trials."  (Id.) Additionally, prior to, and during the accommodation period, an Allstate Human Resources Representative worked with Plaintiff to determine whether there were any other available positions at Allstate for which Plaintiff could apply.  (Def's 56.1 Stmt ¶¶ 26-27; Pl's 56.1 Counterstmt ¶¶ 26-27.)

At the end of Plaintiff's temporary accommodation period, Plaintiff met with his Allstate supervisors to discuss his

7

claimed inability to handle trials. (Def's 56.1 Stmt ¶ 31; Pl's 56.1 Counterstmt ¶ 31.) Plaintiff reaffirmed his request to be relieved from conducting trials. (Def's 56.1 Stmt ¶ 30; Pl's 56.1 Counterstmt ¶ 30.) Allstate then placed Plaintiff on another leave of absence for a two-month period, from January 18, 2016 to March 18, 2016, to allow Plaintiff to search for another position at Allstate for which he was qualified and which did not involve trial work. (Def's 56.1 Stmt ¶ 32; Pl's 56.1 Counterstmt ¶ 32.) This leave of absence was then extended to April 26, 2016 for that same reason. (Def's 56.1 Stmt ¶ 33; Pl's 56.1 Counterstmt ¶ 33.) Plaintiff does not dispute Allstate assisted him, from September 2015 to April 26, 2016, in finding a different position within the company. (Def's 56.1 Stmt ¶ 37; Pl's 56.1 Counterstmt ¶ 37.) However, according to Allstate, there were no vacant attorney positions in the office where Plaintiff worked that did not involve trial work. (Def's 56.1 Stmt ¶ 38; Pl's 56.1 Counterstmt ¶ 38.) Allstate identified several non-attorney positions available to Plaintiff that did not involve trial work; however, Plaintiff rejected, and failed to apply for, those positions. (Def's 56.1 Stmt ¶¶ 41-42; Pl's 56.1 Counterstmt ¶¶ 41-42.)

On April 26, 2016, an Allstate representative informed Plaintiff that his employment at Allstate would be terminated because Plaintiff was unable to handle trials, which was an essential function of his job, and because Plaintiff indicated he

8

was not interested in applying for any other open positions at Allstate. (Def's 56.1 Stmt ¶ 44; Pl's 56.1 Counterstmt ¶¶ 44.) From the date of his termination at Allstate to the date of his deposition, Plaintiff did not seek further employment. (Def's 56.1 Stmt ¶ 47; Pl's 56.1 Counterstmt ¶ 47.)

V. Plaintiff's Job Title and Responsibilities

At all relevant times, Plaintiff's job title was "Law & Regulation (L&R) – Litigation Services Attorney – Expert Band: E." (Def's 56.1 Stmt. ¶ 6; Pl's 56.1 Counterstmt ¶ 6.) Plaintiff "held a designation of Counsel, which was the highest non-managerial trial attorney position, and was expected to handle the more complex trial work." (Id.) Plaintiff's job description listed a "key responsibility" of "try[ing] and/or arbitrat[ing] cases." (Def's 56.1 Stmt. ¶ 7; Pl's 56.1 Counterstmt ¶ 7.) In 2015 and 2016, all attorneys who reported to Plaintiff's supervisor, including Plaintiff, had "trial development goals as one of the performance metrics for which they [were] evaluated." (Lawrence Decl. ¶ 8).

Plaintiff testified he did not have any jury trials from 2010 to 2016. (Pl's Dep. Tr. 86:21-87:19 (noting he may have had trials in 2009 but "never had a jury trial after 2009").) Plaintiff further testified he believed some of his former colleagues did not handle jury trials. (Pl's Dep. Tr. 123:10-130:20.) In particular, he stated: (1) Marie-Anne Inguanti did

9

not handle jury trials, although she was assigned a non-jury trial in Queens; (2) Jeffrey Kuhlman did not handle jury trials but was assigned a trial on liability and/or damages; (3) Arthur Benjamin did not handle trials; (4) Michael Falletta was assigned a trial for purposes of getting his bonus but "never took a verdict"; (5) Michelle Vlosky handled a framed issue trial but he is "not aware" whether she handled regular trials; and (6) he did not know Don Munson was assigned a trial. (Pl's Dep. Tr. 123:10- 130:20.) It is undisputed, however, that none of those employees ever requested or received an accommodation exempting them from performing trial work. (Def's 56.1 Stmt. ¶ 40; Pl's 56.1 Counterstmt ¶ 40.)

## ANALYSIS

### I. Legal Standards

#### A. Summary Judgment

The Court shall grant summary judgment under Rule 56(a) "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a

10

verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d. 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoiting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden of persuasion may be satisfied by either: (1) submitting evidence that negates an essential element of the non-moving party's claim; or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. Id. Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts and instead offer some hard evidence showing that its version of events is not wholly fanciful." Stein v. County. of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted). In reviewing the record, the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). Accordingly, where an issue as to a

11

material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. Id.

Finally, courts employ "an extra measure of caution" before "granting or affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare." Moll v. Telesector Res. Grp., Inc., No. 20-CV-3599, 2024 WL 820179, at *4-5 (2d Cir. Feb. 28, 2024) (citing Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001), abrogated in part on other grounds by Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009)). "Thus, the court must scrutinize affidavits and depositions carefully for circumstantial evidence that, if credited by the factfinder, could reasonably be interpreted as showing discrimination." Id.

B. Discrimination and Failure to Accommodate Under NYHRL

"Discrimination claims brought under NYHRL are generally analyzed under the McDonnell Douglas framework" employed in cases brought pursuant to the Americans with Disabilities Act. Anyan v. N.Y. Life Ins. Co., 192 F. Supp. 2d 228, 245 (S.D.N.Y. 2002), aff'd sub nom., Anyan v. Nelson, 68 F. App'x 260 (2d Cir. 2003); Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 500 n.14 (N.D.N.Y. 2004) (noting analysis under NYHRL "parallels" the analysis required for claims brought under the ADA). To state a prima facie case for employment discrimination under NYHRL, a plaintiff must show: "(1) he suffers from a disability as that term is defined

under the statute, and (2) that the disability caused the behavior for which he was terminated." Id. NYHRL defines the term disability as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.

N.Y. Exec. Law § 292(21).

Similarly, "[a] prima facie case of failure to provide an accommodation pursuant to NYHRL requires the same showing as under the ADA," that is: (1) "the plaintiff was disabled within the terms of the statute[;] [(2)] his employer had notice of his disability[;] [(3)] he could perform the essential functions of the job, with reasonable accommodation[;] and [(4)] the employer failed to make such accommodations." Shannon v. Verizon N.Y., Inc., 519 F. Supp. 2d 304, 310-11 (N.D.N.Y. 2007) (citing Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001)); see also Picinich v. United Parcel Serv., 321 F. Supp. 2d at 499.

13

In determining what the "essential functions" of a job are, courts consider: (1) the employer's judgment as to what the essential functions are; (2) written job descriptions; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the employee to perform the function; (5) the mention of the function in a collective bargaining agreement; (4) the work experience of past employees in the position; and (6) the work experience of current employees in similar positions. McMillan v. City of N.Y., 711 F.3d 120, 126 (2d Cir. 2013); Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997). "Although the court will give considerable deference to an employer's determination as to what functions are essential," no one factor is dispositive. McMillan, 711 F.3d at 126. "[T]he identification of the essential functions of a job requires a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice." Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 140 (2d Cir. 1995) (stating where plaintiff, a tenured school library teacher, requested an accommodation whereby a teacher's aide would support plaintiff in "maintaining classroom control," "[d]etermining what is an essential part of [plaintiff's] job and examining in detail the manner in which a teaching aide might assist [plaintiff] in maintaining classroom control are of critical importance to this case because those inquiries establish the framework for

14

determining whether [plaintiff] has met her burden of showing that she is otherwise qualified").

## II. Discussion

### A. The Essential Functions of Plaintiff's Job Cannot Be Established as a Matter of Law

Plaintiff's claims of employment discrimination and failure to accommodate each require the Court to find that Plaintiff could perform the "essential functions" of his job if provided with a reasonable accommodation. Anyan, 192 F. Supp. 2d at 245 ("To state a prima facie case under the NYHRL, the plaintiff must establish that (1) he suffers from a disability as that term is defined under the statute, and (2) that the disability caused the behavior for which he was terminated.") (quoting Guzman v. ARC XVI Inwood, Inc., No. 97-CV-0031, 1999 WL 178786 (S.D.N.Y. Mar. 30, 1999) (alterations omitted)); N.Y. Exec. Law § 292(21) (defining "disability" as an impairment in which, "upon the provision of reasonable accommodations, do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held"); Shannon, 519 F. Supp. 2d at 310-11 (requiring plaintiff to prove "he could perform the essential functions of [his] job[] with reasonable accommodation" in order to prove a prima facie case of failure to accommodate). Thus, to determine whether Plaintiff is "disabled" within the meaning of NYHRL, or whether Plaintiff could perform

15

the essential functions of his job with a reasonable accommodation, the Court must have a clear understanding the "essential functions" of Plaintiff's job.  In particular, and as relevant here, the Court must determine whether "trying cases" was an essential function of Plaintiff's job at Allstate.[3]

In its Motion, Defendant argues that "trying cases" was an essential function of Plaintiff's job as a trial and litigation attorney at Allstate.  (Support Memo at 9-10.)  In support of its argument, Defendant provides the following evidence: (1) a sworn declaration of Allstate representative and Plaintiff's former supervisor, Karen L. Lawrence, stating "trial work is identified in [Plaintiff's] job description as a Key Responsibility and is an essential function of his position" and trial development was a "performance metric[] for which" Plaintiff and other attorneys in his position were evaluated; and (2) Plaintiff's written job description, which states Plaintiff was responsible for "prepar[ing] for and conduct[ing] . . . trials" and had the "key responsibility" of "[s]econd chair[ing] cases with Trial Attorneys

---

[3] The Court acknowledges the parties' apparent dispute as to whether Plaintiff indicated he could not conduct <u>any trials</u> or that he could not conduct <u>jury trials</u>.  All accommodation requests and medical forms submitted in connection with the instant Motion, including those forms submitted by Plaintiff's doctor, indicate Plaintiff requested he not conduct <u>any trials</u>, without distinguishing between jury and non-jury trials.  (<u>See, e.g.</u>, Exhibits <u>attached to</u> Foney Decl., ECF Nos. 48-1 through 48-8.)  In his deposition, however, Plaintiff maintained he could, and did, conduct non-jury trials despite his medical conditions.  (Pl's Dep. Tr. 84:9-84:16, 106:2-107:6, 127:9-127:17.)  The Court does not, and indeed cannot, at this summary judgment stage, determine whether Plaintiff requested he be exempt from all trials or only jury trials.

16

and Senior Trial Attorneys as needed." (Lawrence Decl. ¶¶ 7-8; Job Description; Support Memo at 9-12.) In opposition, Plaintiff argues trying cases was not an essential function of his job because: (1) jury trials are not listed as an essential component of his job in his job description; (2) he did not conduct jury trials from 2010-2016; and (3) Plaintiff's contemporaries at Allstate were not required to conduct jury trials. (Opp'n at 9-10; Pl's Dep. Tr. 86:21-87:19, 123:10- 130:20.)

Here, in light of the factors considered by courts in determining an employee's "essential job functions" under NYHRL, and upon review of the evidence submitted by the parties, there exists a genuine dispute as to whether "trying cases" was an essential component of Plaintiff's job at Allstate. See McMillan, 711 F.3d at 126. Although Courts should give "considerable deference" to an employer's account of what functions are "essential" to the jobs they maintain, the identification of essential job functions is a "fact-specific inquiry." Id.; see also Borkowski, 63 F.3d at 140. Plaintiff and Defendant have each brought forth relevant facts and evidence supporting their respective opposing positions on whether "trying cases" was a job function that was "essential" to Plaintiff's position at Allstate. (See discussion of evidence supra.) Upon the record presented, the Court cannot determine as a matter of law whether "trying cases" was, in fact, essential to Plaintiff's job without weighing

17

the evidence and making credibility determinations, which the Court may not do at this summary judgment stage of the litigation. <u>Kaytor</u>, 609 F.3d 537 at 545. Defendant's Motion is therefore denied insofar as it seeks dismissal of Plaintiff's discrimination claims.

III. <u>Defendant's Request to Dismiss Plaintiff's Claims for Backpay and Punitive Damages is Premature</u>

The Court finds Defendant's request for summary judgment with respect to Plaintiff's backpay and punitive damages claims to be premature at this juncture. Defendant is, however, free to renew its request at a later stage of litigation, should Plaintiff prevail on his claims. <u>See</u> <u>Cooper v. N.Y.S. Nurses Ass'n</u>, 847 F. Supp. 2d 437, 453 (E.D.N.Y. 2012) (denying summary judgment on damages issues without prejudice to renew); <u>Cole v. Uni-Marts, Inc.</u>, 88 F. Supp. 2d 67, 76 (W.D.N.Y. 2000) (failing to reduce backpay damages at the summary judgment stage because doing so would be "obviously premature" in a case that "has not yet been tried") (citations and quotations omitted). Accordingly, Defendant's Motion is denied with respect to its request to dismiss Plaintiff's claims for backpay and punitive damages.

CONCLUSION

For the stated reasons, it is HEREBY ORDERED that Defendant's Motion for Summary Judgment (ECF No. 42) is DENIED in its entirety. It is FURTHER ORDERED that, in accordance with the undersigned's Individual Rules (see Individual Rule VI.A), the parties are directed to file a proposed pretrial order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 4, 2024
       Central Islip, New York